IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **OCTAVIOUS BUFORD, etc.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 21-0095-WS-MU |
| | ) |
| **JEFFERSON DUNN, etc., et al.,** | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the defendants' motion for summary judgment. (Doc. 52). The plaintiff has filed a response, (Doc. 54), the defendants elected not to file a reply, (Doc. 53), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in its entirety.

## BACKGROUND

The plaintiff, a state inmate who has at various times been housed at Holman Correctional Facility and at St. Clair Correctional Facility, filed suit in the Northern District of Alabama, naming as defendants: (1) Jefferson Dunn, commissioner of the Alabama Department of Corrections; (2) Cynthia Stewart, warden of Holman; (3) Terry Raybon, assistant warden of Holman; and (4) Leon Bolling, warden of St. Clair. (Doc. 1). Dunn is sued only in his official capacity, the remaining defendants only in their individual capacity. (*Id*. at 1). Judge Kallon entered an order severing Counts I through V, which concern the plaintiff's time at Holman, and transferring that portion of the lawsuit to the Southern District of Alabama. (Doc. 17).

The plaintiff concedes that his claims against Dunn and Bolling are confined to Count VI and are not before the Court. (Doc. 54 at 14). The plaintiff further concedes that Stewart and Raybon are entitled to summary judgment as to Count I, a conspiracy

claim under Section 1985(3).  (*Id*. at 1).  He further concedes that summary judgment is appropriate as to Count III, which sought to impose supervisory liability on Stewart for a beating administered to the plaintiff, for lack of evidence that she supervised the beating.  (*Id*. at 2).

Remaining for consideration are Counts II, IV, and V.  Count IV alleges that, when he was transferred from St. Clair to Holman, the plaintiff was placed in administrative segregation and subjected to unconstitutional conditions of confinement, amounting to cruel and unusual punishment in violation of the Eighth Amendment.  (Doc. 1 at 5-7, 10-11, 15-17).  Count II alleges that, after the plaintiff filed a civil action in this Court challenging the conditions of his confinement and naming Raybon and Stewart as defendants, prison guards beat the plaintiff on Raybon's orders and with his awareness, amounting to cruel and unusual punishment in violation of the Eighth Amendment.  (*Id*. at 8-9, 13-14).  Count V alleges that the plaintiff's beating constituted retaliation prohibited by the Americans with Disabilities Act ("ADA").  (*Id*. at 17). Count II is brought only against Raybon; Counts IV and V are brought against both defendants.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden."  *Id*.  "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial."  *Id*.; *accord Mullins v. Crowell*, 228

F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the [non-movant's] version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the [movants] and not in tension with the [non-movant's] version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). The Court accordingly limits its review to those arguments the parties have expressly advanced.

The plaintiff has submitted the entirety of three depositions, totaling some 534 pages, though he cites to only a handful of them. This practice violates Civil Local Rule 5(a) ("If discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed with the motion or response."). A party may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting his position. *E.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). Accordingly, the Court limits its evidentiary review to those pages expressly relied on by the parties in their briefs.

**I. Conditions of Confinement.**

The plaintiff testified that the toilet in the cell in which he spent the final seven months of his confinement at Holman chronically backed up, such that "nasty" "waste water" would "bus[t] up under the bottom [and] just gus[h] in the floor." The plaintiff was required to "wal[k] through water" to use the toilet, and he once slipped in it, injuring his back. A maintenance worker tried to fix the problem – by stuffing towels and shirts – but failed. The plaintiff tried toothpaste and glue but also failed to fix the problem. (Doc. 54-1 at 83-85).[1]

"The Eighth Amendment governs the conditions of a prisoner's confinement." *Brooks v. Warden*, 800 F.3d 1295, 1303 (11th Cir. 2015). "[T]he Constitution … does not allow a prisoner to be exposed to an objectively unreasonable risk of serious damage to his future health." *Id.* (internal quotes omitted). "This Court, and the old Fifth Circuit, have long recognized a well established Eighth Amendment right not to be confined … in conditions lacking basic sanitation." *Id.* (internal quotes omitted). Even fifty years ago, the old Fifth Circuit concluded that the "common thread that runs through all these [prison conditions] cases … is the deprivation of basic elements of hygiene." *Id.* at 1304

---

[1] The defendants acknowledge the plaintiff's evidence that "raw sewage was routinely on the floor of his cell," but they say the discovery of a contraband phone under the toilet undermines his story. (Doc. 52 at 12). And so it may but, on motion for summary judgment, conflicts in the evidence must be resolved in the non-movant's favor.

4

(internal quotes omitted). And "every sister circuit (except the Federal Circuit) has recognized that the deprivation of basic sanitary conditions can constitute an Eighth Amendment violation." *Id*.

The old Fifth Circuit "cited with approval cases in which prisoners had successfully stated Eighth Amendment claims based on being placed in contact and close proximity with excrement." *Brooks*, 800 F.3d at 1304. Many of the sister court opinions cited in *Brooks* likewise found such exposure to human waste incompatible with the Eighth Amendment.[2] Because "the health risks of prolonged exposure to human excrement are obvious," such exposure "satisf[ies] the objective element of an Eighth Amendment violation." *Id*. at 1305. "Prolonged exposure" includes "where a prisoner was exposed to standing water in his cell that contained his own urine and other prisoners' waste for 36 hours." *Id*. (describing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)).[3]

Based on these authorities, the Court assumes for present purposes that the condition described by the plaintiff satisfies the objective component of his Eighth Amendment claim. To satisfy the subjective component of deliberate indifference, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotes omitted). The defendants argue the plaintiff has no evidence they were aware that his cell floor was routinely wet

---

[2] *Saunders v. Sheriff of Brevard County*, 735 Fed. Appx. 559, 568 (11th Cir. 2018) (some of the cases cited in *Brooks* "expressly hold that extended exposure to human excrement violates the Constitution"); *see, e.g., DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment."); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2nd Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted.").

[3] The defendants' suggestion that the plaintiff must show a "documented injur[y] from the condition," (Doc. 52 at 12), is rejected as squarely contrary to binding precedent's focus on "risk" to "future health," not actual, present injury.

with waste water. (Doc. 52 at 12). The plaintiff in brief says he "personally discussed the problems with" the defendants, (Doc. 54 at 5-6), but the deposition pages to which he cites for this proposition, while they mention issues with his cell, are devoid of any reference to the defendants, much less of any discussion with them concerning waste water in his cell. (Doc. 54-1 at 83-88). The plaintiff later states that the defendants "had direct specific knowledge of the conditions in [his] cell, because they visited the cell [and] discussed the situation with" him, and "the record in this matter does reveal what was said to those persons." (Doc. 54 at 10-11). This time, the plaintiff does cite to relevant deposition testimony, according to which the defendants "came around one day." The plaintiff "made a joke" about suing them, and when asked why, he answered, "[b]ecause the way you got me up under these conditions." (Doc. 54-1 at 93). Because the plaintiff relies on what he told the defendants, and because he has no evidence that he told them what "these conditions" were, he cannot establish their subjective awareness that his cell floor was chronically wet with waste water. Without such awareness, the plaintiff's claim necessarily fails.[4]

## II. Excessive Force.

The plaintiff testified that, after the conversation related in the preceding paragraph, Raybon walked off and "sent the riot team back in my room." (Doc. 54-1 at 93-94). An officer awakened the plaintiff and asked, "what you and Raybon got going on," and said that Raybon had "sent us to you." (*Id*. at 123, 130). The plaintiff declined to exit his cell and was sprayed with a large quantity of mace, which prevented him from seeing anything further during the incident. (*Id*. at 124, 128-29, 134, 150). The plaintiff

---

[4] To the uncertain extent the plaintiff relies on the awareness of a maintenance worker and/or other persons about the water issue, (Doc. 54 at 5, 10-11), he has identified no evidence that these persons made the defendants subjectively aware of it. *See Johnson v. Lang*, 2022 WL 2734421 at *6 (11th Cir. 2022) (relied on by the plaintiff) (even if the plaintiff made his complaints known to the segregation board, without evidence that the board communicated this information to the defendants, he could not show they had subjective knowledge of his living conditions).

then presented his wrists through the food tray hole in the door, and he was cuffed with his arms behind his back. (*Id*. at 128-31).  Two or three officers then entered the cell and began beating the plaintiff, beginning with a fist blow to the back of the head, followed by a kick in the leg and a knee in the back. (*Id*. at 131, 134-35).  For five or ten minutes, the officers punched the plaintiff, kicked him, slammed him against the wall, threw him on the ground, stomped him, and poked him with a stick or baton. (*Id*. at 144-45).  The plaintiff was then walked to the infirmary, where an officer punched him twice in the face. (*Id*. at 145-46, 148).

      The defendants argue that no excessive force was employed.  They say the application of mace was justified as necessary to conduct a search of the plaintiff's cell for contraband once he refused to present his wrists for cuffing; the defendants do not acknowledge any of the plaintiff's testimony regarding the beating bestowed on him after he was maced and cuffed. (Doc. 52 at 10).  As noted previously, on motion for summary judgment the plaintiffs' evidence must be accepted, and the defendants cannot obtain summary judgment simply by ignoring that evidence.  *E.g., Sears v. Roberts*, 922 F.3d 1199, 1206, 1208 (11th Cir. 2019) (on motion for summary judgment in an excessive force case, the trial court must credit the inmate's sworn testimony and not the conflicting evidence of the defendants and the prison).

      "By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has already been subdued …."  *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002).  "The use of force must stop when the need for it to maintain or restore discipline no longer exists."  *Id*. at 1304.  "[I]t is not constitutionally permissible for officers to administer a beating as punishment for a prisoner's past misconduct."  *Id*. at 1302.  Under the plaintiff's testimony, all noncompliance had ended when he presented his wrists for cuffing, which cuffing rendered him subdued and not subject to further violence by the officers.  A properly functioning jury could accept the plaintiff's version of events, making his beating a gratuitous use of force against a subdued and compliant prisoner, administered as a form of punishment in violation of the Eighth Amendment.

7

The defendants point out that, when he was presented at the infirmary immediately after the beating, the LPN who filled out the inmate body chart documentation form wrote, "No redness, or markings. Skin intact." (Doc. 52 at 10; Doc. 52-8).[5] It is true that "[t]he absence of serious injury is … relevant to the Eighth Amendment inquiry," but it "does not end it." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Constitution does not impose a "significant injury requirement," below which threshold no violation occurs. *Id*. at 5, 9-10. The defendants have not asserted, much less demonstrated, that a lack of visible injury precludes the plaintiff's claim.

The defendants do argue that the plaintiff cannot establish a basis for supervisory liability. (Doc. 52 at 8-9, 10-11). The defendants recognize that one basis for such liability is if the supervisor directs his subordinates to act unlawfully. (*Id*. at 8). The complaint alleges that Raybon "ordered" the plaintiff's beating, (Doc. 1 at 9), and the plaintiff repeats that accusation in his brief, (Doc. 54 at 11), but he testified only that Raybon "sent the riot team back in [my] room," not that he sent the team with orders to assault the plaintiff. (Doc. 54-1 at 93-94). The hearsay comments by the officers likewise say only that Raybon sent them, not that he sent them to beat the plaintiff. (*Id*. at 123, 130). The plaintiff therefore cannot establish Raybon's liability on the theory that he directed the officers to beat him.

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich*, 280 F.3d at 1301; *accord Sears*, 922 F.3d at 1205-06. The plaintiff relies on a similar rule applicable specifically to supervisors: "A failure to stop claim under a theory of supervisory liability only requires that the supervisor (1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it." *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010).

---

[5] The plaintiff "objects to the consideration of that chart" but offers no argument for its exclusion. (Doc. 54 at 7).

8

The plaintiff argues that Raybon "was present at the scene" and "watched" the beating. (Doc. 54 at 6). He relies on the testimony of a fellow inmate for the proposition that Raybon "stationed himself 'in the cube,' a secured guard post with direct line of sight into the cells," where he "could supervise and thus control Buford's beating from behind the glass." (*Id.* at 8). The witness testified (four times) only that he "thinks" Raybon was in the cube (which he does not describe) "when all of this happened." (Doc. 54-2 at 90-91). Assuming without deciding that what an inmate "thinks" is sufficient to create a fact issue as to Raybon's location during the beating,[6] the plaintiff presents no evidence to support his assertion in brief that the cube had a "direct line of sight into" his cell. Nor does the plaintiff demonstrate that, if Raybon was in the cube, he was looking into the plaintiff's cell and not elsewhere. Nor does he demonstrate that the mere possibility Raybon could have observed the beating (if he was in the cube, and if the interior of the plaintiff's cell could be seen from inside the cube, and if Raybon was looking in that direction at the correct time) is a sufficient showing to reach a jury. Certainly Raybon could not have "known" of a constitutional violation unless he actually witnessed it.

Because the plaintiff has failed to present evidence creating a jury issue as to whether Raybon ordered the beating or possessed a legally sufficient awareness that unconstitutionally excessive force was being administered, his claim must fail.

**III.  Retaliation.**

Count V alleges that, "[a]fter Buford filed the Southern District Action to protest the violation of his rights under the ADA, Assistant Warden Raybon and/or Warden Stewart caused guards to beat Buford." (Doc. 1 at 17). The plaintiff now concedes that "the evidence shows that Warden Raybon had Buford beaten because Buford threatened

---

[6] "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The witness provided no basis for concluding that he had personal knowledge of Raybon's whereabouts as opposed to hazarding a guess. *Cf. Pace v. Capobianco*, 283 F.3d 1275, 1278-79 (11th Cir. 2002) ("[A]n affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to defeat summary judgment ….").

legal action against Raybon, but that threatened legal action had nothing to do with the ADA." (Doc. 54 at 2). The plaintiff thereby concedes that Count V, which asserts a claim of retaliation for the exercise of rights under the ADA, is non-viable. He nevertheless proposes that he be "allowed to proceed with Count V" as a claim for retaliation for the exercise of First Amendment rights. (*Id*. at 2, 13).[7]

What the plaintiff seeks is an amendment of the complaint to assert a different retaliation claim from the one actually pleaded. The deadline for moving for leave to amend the pleadings passed on July 12, 2021, (Doc. 24 at 2), and the plaintiff has not attempted to demonstrate the "good cause" needed to permit such an amendment. Fed. R. Civ. P. 16(b)(4). Nor could he do so, given that the evidence and the law needed to assert such a claim have been available to him since suit was filed almost two years ago. Construing the plaintiff's request to "proceed with Count V" as a motion for leave to amend the complaint, the motion is **denied**.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is **granted**. Counts I through V (which constitute the entire action as transferred) are **dismissed with prejudice**. Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 20th day of December, 2022.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[7] The defendants in their brief address the parameters of such a claim. (Doc. 52 at 12-13).